# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50320
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2014

Lyle W. Cayce
Clerk

FAKIH J. KHALFANI,

Plaintiff - Appellant

v.

BALFOUR BEATTY COMMUNITIES, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:12-CV-422

Before HIGGINBOTHAM, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

In this employment discrimination case, the plaintiff, Fakih J. Khalfani ("Khalfani") levies two charges against his former employer, Balfour Beatty Communities, L.L.C. ("Balfour"): (1) unlawful retaliation, and (2) race and color discrimination. Balfour moved for summary judgment on both counts, which the district court granted. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-50320

Khalfani was an African American employee of Balfour, which owns and operates military housing at Fort Bliss, Texas.    During his tenure at the company, he raised several complaints about racially discriminatory behavior with his supervisor.  At the time of his termination, Khalfani was a housing inspector who was responsible for "checking out" rental property after the previous tenants had left – in essence to determine what, if any, repairs needed to be conducted when a rental unit was transferred to a new tenant.  In August 2011, Balfour received a complaint that, during a check out, Khalfani had removed and disposed of certain personal items belonging to a former resident. Khalfani was terminated a few days later.

We analyze this case pursuant to our Title VII jurisprudence.[1]   In general, that analysis follows in three parts: (1) the employee-plaintiff must make a prima facie case of unlawful retaliation or race/color discrimination, (2) the burden of production shifts to the employer-defendant, who must articulate a legitimate, non-discriminatory reason for the challenged action, and (3) if it does, the plaintiff can show that the defendant's stated reason is pretextual.[2] The district court concluded – and we agree – that Khalfani had met his burden of making a prima facie showing of retaliation and race/color discrimination, and then that Balfour had shown adequate neutral reasons for taking the job

---

[1] Khalfani brought both his race and color discrimination claim and his retaliation claim pursuant to Chapter 21 of the Texas Labor Code and 42 U.S.C. § 1981. R. 1380.  The legal framework governing claims under both statutes is the same as for claims brought under Title VII.  *See, e.g., Thompson* v. *City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (discrimination claim brought under section 1981 is analyzed pursuant to Title VII framework); *Willis* v. *Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (retaliation claim brought under section 1981 is analyzed pursuant to Title VII framework); *Wallace* v. *Methodist Hosp. Sys.*, 271 F.3d 212, 219 n.10 (5th Cir. 2001) (claims brought pursuant to Chapter 21 of the Texas Labor Code are analyzed pursuant to Title VII framework).

[2] *See, e.g., Haire* v. *Bd of Sup'rs of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362-63 (5th Cir. 2013) (citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973)).

No. 14-50320

actions at issue. The court then held that Khalfani had made an insufficient showing of pretext in both his race/color and retaliation claims.

While we agree with the district court's pretext analysis, Khalfani raises several arguments in his appellate briefing that were not addressed by the lower court, and which warrant consideration here.[3]

I.

Turning first to the unlawful retaliation claim, Khalfani now focuses on two arguments to show pretext. First, he points to the behavior of his supervisor, and states that when he complained of mistreatment based on his race, the supervisor would turn "red in the face" and would get angry with him after he brought up reports that he had been racially discriminated against.[4] Taking these statements about the supervisor's emotional reaction as true, as we must, they are not enough to show pretext. We have held that "[a]n oral statement exhibiting discriminatory animus may be used to demonstrate pretext."[5] Here, there are no explicit oral statements, rather there are emotional reactions. We have never held that non-verbal evidence alone is sufficient to show pretext, though there is no logical reason why it could not be used under certain circumstances. The determining factor is the clarity of the evidence: we require such statements to clearly "demonstrate discriminatory

---

[3] While these arguments were not discussed in depth in Khalfani's memorandum in opposition to summary judgment, they were mentioned in district court papers. As such, we do not consider them waived, nor does the appellee so argue. *See Blackwell* v. *Laque*, 275 F. App'x 363, 366 n.3 (5th Cir. 2008) (unpublished).

[4] Khalfani cites to a deposition where he acknowledged that his supervisor "never said anything derogatory to [him] about [his] race," but stated that when he complained about discrimination, the supervisor "just turned really red in the face." R. 863. In an affidavit, Khalfani averred that "[t]he more I brought this up to him [the alleged differential treatment based on race], the angrier he got with me." R. 975.

[5] *Laxton* v. *Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003); *see also Kanida* v. *Gulf Coast Medical Personnel LP*, 363 F.3d 568, 581 (5th Cir. 2004) ("comments are admissible to show pretext if they 1) show retaliatory animus and 2) were made by the individual primarily responsible for the retaliatory conduct.").

No. 14-50320

animus,"[6] and here, it is not clear, without more, that animus motivated the supervisor's emotional reaction.

Second, Khalfani argues that the district court should have looked at the "course of conduct [against him]," including changes in his job responsibilities, increased scrutiny of his activities, and false discipline.[7]   We have acknowledged that course of employer conduct can be relevant, and have held that "the combination of suspicious timing with other significant evidence of pretext" can warrant denial of a summary judgment motion.[8]  This standard can be met when, for example, the plaintiff had highly positive performance reviews up until the complaint was leveled against the company, and then suffered a sharp decline in treatment immediately after the protected conduct occurred.[9]  It is not met here.  Rather, as the district court concluded, there was a lack of clear temporal proximity between the complaints and the negative job consequences, making it difficult to find the sharp decline in treatment we have previously used to infer causality, and with it, pretext.[10] Given the Supreme Court's recent clarification that a plaintiff making a retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer,"[11] we cannot conclude that Khalfani has adequately shown pretext.

## II.

Khalfani's second claim was for race and color discrimination.  In his briefing, Khalfani focuses on two arguments: (1) that he did not violate

---

[6] *Laxton*, 333 F.3d at 583.

[7] Appellant Br. 49.

[8] *Shackelford* v. *Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999).

[9] *Id.* at 409-10 (collecting cases).

[10] *See* R. 1399-1400.

[11] *Univ. of Tex. Sw. Med. Center* v. *Nassar*, 133 S. Ct. 2517, 2534 (2013).

4

No. 14-50320

Balfour's policy when he threw out the tenant property, and (2) even if he did violate the policy, the policy was inconsistently applied.

Turning to the first issue, there is evidence in the summary judgment record that there was no written documentation of a policy about not disposing of material left by tenants.[12]  Even assuming this is true, as we do, it is of no moment.  We have held that a good faith termination based on neutral reasons – even mistaken reasons – does not violate antidiscrimination law.[13]  The key inquiry is thus whether Khalfani's supervisor believed that Khalfani's actions violated procedure, not whether those actions actually violated such a policy.  And as the district court noted, there is no evidence in the record in support of that proposition.[14]

Next, Khalfani argues that the tenant property policy was inconsistently applied, and puts forth testimony from his deposition that other inspectors had thrown out resident property and had not been terminated.[15]  This is not enough.  Though we have held that differential treatment of similarly-situated employees can show pretext, we require that the contexts be "nearly identical,"[16] and here there is no evidence in the record about the relative contexts of employees who were responsible for the disposal of tenant property.  As a consequence, Khalfani's second pretext argument falls short.

---

[12] *See* R. 943-43.  The Balfour official who testified at a deposition that there was no written policy did, however, state that there was a "standard operating procedure" forbidding employees from throwing out tenant property without permission.  *See id.*  Moreover, there does appear to be a written code of conduct which prohibits this behavior.  *See id.* at 1412.

[13] *See, e.g.*, *Bryant* v. *Compass Grp. USA, Inc.*, 413 F.3d 471, 477 (5th Cir. 2005).

[14] *See* R. 1412-13.

[15] *See id.* at 854 ("Q: Are you aware of any other employees that were Turnkey Inspectors that did a turn ultimately resulting in some valuable property being disposed of, that weren't terminated? A [Khalfani]: I can remember an incident happening at Biggs Airfield, the Sergeant Major Academy….[s]omebody went and took everything out of that unit.  The Inspector was not terminated.").

[16] *Hernandez* v. *Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012).

No. 14-50320

## III.

For the aforementioned reasons, as well as the reasons expressed in the district court opinion, we AFFIRM the district court decision granting summary judgment in favor of the defendant.