**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1580
_____

TUESDAY S. BANNER,
                                        Appellant

v.

GENELLE FLETCHER
_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. Civil Action No. 1:14-cv-00691)
District Judge: Honorable Leonard P. Stark
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 2, 2020
Before:  CHAGARES, PHIPPS and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 5, 2020)
_____

OPINION[*]
_____

PER CURIAM

     Pro se appellant Tuesday S. Banner appeals the District Court's grant of summary

judgment in favor of defendant Genelle Fletcher on her interference and retaliation claims

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq. For the reasons that follow, we will affirm the District Court's judgment.

I.

Banner began working as an administrative assistant with the Delaware Department of Health and Social Services, Division of the Visually Impaired ("DHSS/DVI"), in October 2005. She worked there until her employment was terminated on March 1, 2013. Defendant Fletcher became Banner's supervisor in 2010.

Banner sought and received intermittent FMLA leave for prenatal care and, later, for the care of her child, each year between 2007-2012. DHSS/DVI supervisors and managers tracked employee FMLA leave and calculated an employee's 12-month FMLA period as measured forward from the date of the employee's FMLA eligibility, pursuant to 29 C.F.R. § 825.200(b)(3). In June 2012, Banner sought intermittent FMLA leave for work-related stress, anxiety, and depression. Her request was approved on June 26, 2012, permitting her to take leave one to two times every one to two months for up to three days at a time. Fletcher signed off on Banner's FMLA paperwork in June and subsequently; Banner's leave ledgers indicate that she regularly took FMLA leave from June through September 2012.

Banner's last day of work at DHSS/DVI was September 3, 2012. She came into the office on September 4 to turn in paperwork from her physician, who recommended that she stay out of work due to work-related stress until October 8, 2012. Banner applied for block FMLA leave for herself on October 2, 2012, beginning on September 4, for the same condition for which she sought leave in June. Banner's request was

2

approved and she was informed that she could take leave until her available FMLA hours were used up. She also received short-term disability benefits from DHSS/DVI's short-term disability provider from October 4, 2012 until November 13, 2012.

Banner never returned to work. She brought in a doctor's note in December 2012 that said that she should be out of work from December 4 until an upcoming December 11 follow-up appointment; she did not provide an updated doctor's note after the appointment. Banner was informed on December 13 that her FMLA leave had expired on November 7. She was advised to return to work by December 28, 2012, if she was able to, and that if she was not able to work, she could either obtain renewed approval for short-term disability benefits, obtain written approval from DHSS/DVI for a leave of absence without pay, or resign. Banner responded by requesting FMLA leave from December 6, 2012, until March 7, 2013. Banner was informed that same day that she had exhausted all of her FMLA leave since she had not been to work since September 4, 2012. Banner did not return to work, nor did she seek a leave of absence.[1]

In January 2013, the director of the DVI advised Banner that he was proposing her dismissal because she had not returned to work following the expiration of her short-term disability as directed, she had exhausted all of her FMLA leave, and she had failed to follow supervisory directives. Banner requested and received a pre-termination hearing. On March 1, 2013, Banner was notified that the dismissal recommendation had been

---

[1] After Banner pursued several appeals regarding her disability benefits, she ultimately received retroactive short-term disability benefits from November 14, 2012, until February 28, 2013.

approved because her absences were not covered by FMLA or short-term disability leave but that she had nonetheless not come in to work. Banner's termination was upheld on appeal by the Merit Employee Relations Board and in state court. Banner also sought, and received, unemployment compensation.

Banner filed a complaint in the District Court in 2014. After numerous claims and defendants were dismissed, only Banner's FMLA interference and retaliation claims against Fletcher proceeded to discovery. Ultimately, after Fletcher moved for summary judgment the District Court granted her motion. Banner timely appealed and seeks review of the summary judgment determination.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for Fletcher. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

To state a claim for FMLA interference, a plaintiff must establish that:

(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his

4

or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

Capps v. Mondelez Glob., LLC, 847 F.3d 144, 155 (3d Cir. 2017) (citation omitted).  In this case, Banner cannot establish that she was denied rights to which she was entitled under the FMLA.

The FMLA provides, in relevant part, that eligible employees are entitled to 12 workweeks of leave during any 12-month period due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The FMLA permits employers to choose among several methods for determining the 12-month period in which the 12 workweeks of an employee's leave entitlement occur, and the undisputed record indicates that Banner's employer used the method set out in 29 C.F.R. § 825.200(b)(3) — "[t]he 12-month period measured forward from the date any employee's first FMLA leave . . . begins."

Banner argues on appeal that the start date for measuring her leave should have been September 2012, because she had previously been recertified each year for FMLA leave for her child each September.  However, the record shows that Banner began taking FMLA leave for her own health condition in June 2012, which began her 12-month leave entitlement period for that condition under her employer's calculation method.  She has pointed to no evidence that refutes her employer's documentation of consistently using the calculation method set out in § 825.200(b)(3).  Accordingly, Banner's employer began to calculate her leave usage for her own health issue for a 12-month period beginning in June 2012.

5

Banner also argues on appeal that she did not receive proper notice regarding her FMLA leave in the fall of 2012.[2] "The FMLA requires employers to provide employees with both general and individual notice about the FMLA." Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 318 (3d Cir. 2014). "When an employee requests FMLA leave, . . . the employer must notify the employee of the employee's eligibility to take FMLA leave" and "eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12–month period." 29 C.F.R. § 825.300(b)(1). "All FMLA absences for the same qualifying reason are considered a single leave." Id. Accordingly, Banner's employer was not required to continue to provide notice each time she renewed her request for leave for work-related stress after June 2012. See DeVoss v. Sw. Airlines Co., 903 F.3d 487, 491 (5th Cir. 2018) (explaining that an employer was not required to re-issue notice to a plaintiff when she took leave for the same reason for which her initial FMLA notice was issued within the applicable 12-month period).

The record demonstrates that Banner had exhausted her 12 workweeks of FMLA leave for herself by the time she sought additional FMLA leave in December 2012, for the 12-month period that began in June 2012, based on her use of intermittent leave between June and September 2012 and block leave from September 2012 onward. Banner has pointed to no evidence that challenges her employer's records regarding the

---

[2] To the extent that Banner makes new arguments in her reply brief that she could have raised in her opening brief, this Court will not "reach arguments raised for the first time in a reply brief." See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146 (3d Cir. 2017).

FMLA leave she took in 2012. Banner has argued that she had to be out of work on her doctor's orders, that she later received — or should have received — other benefits that should have prevented her employer from terminating her, and that she should have been reinstated, but none of these arguments address the central inquiry at issue in her FMLA interference claim: whether she was denied any FMLA benefits to which she was entitled. Because the record shows that Banner had exhausted her leave by the time she sought recertification in December 2012, Fletcher is entitled to summary judgment on this claim.

Next, to state a prima facie case of FMLA retaliation under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff must show "that (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." See Capps, 847 F.3d at 152 n.6. Unduly suggestive temporal proximity between an invocation of FMLA leave and an adverse action can be "sufficient standing alone to create an inference of causality and defeat summary judgment" — otherwise, "[w]here the temporal proximity is not unusually suggestive, we ask whether the proffered evidence, looked at as a whole, may suffice to raise the inference." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (internal quotation marks and citation omitted). "Whether a causal link exists must be considered with a careful eye to the specific facts and circumstances encountered." Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (internal quotation marks and citation omitted).

7

In this case, as the District Court properly concluded, Banner cannot state a prima facie case of FMLA retaliation because the record does not indicate a causal link between her invocation of her FMLA rights and her termination. Banner consistently requested, was granted, and used FMLA leave for years before 2012, and she was denied additional FMLA leave in 2012 only after she had exhausted her leave for that year. She was then terminated in March 2013 after she was presented with various options to secure other forms of leave from her position, but did not do so, nearly four months after her last FMLA leave request. Cf. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (concluding in the context of a Title VII retaliation claim that "though there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment"). No other circumstances in the record raise an inference of a causal link between Banner's renewed invocation of FMLA leave and her termination. The District Court thus properly granted summary judgment for Fletcher on Banner's remaining FMLA retaliation claim.[3] Accordingly, we will affirm the judgment of the District Court.

---

[3] Banner mentions in her brief that she seeks to reinstate DHSS/DVI as a defendant to properly "effectuate" her FMLA claims. See Appellant's Br. at ECF p. 20. Because her FMLA claims lack merit, there is no basis for such action.